[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a limited contested dissolution of marriage action wherein the parties are principally at issue over the distribution of marital assets. General Statutes § 46b-81
sets forth the criteria to be used in determining the distribution of assets. They include the length of the marriage, the reason for the breakdown, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income, and the contribution of each party in the acquisition, preservation or appreciation in value of their respective estates. The Court has considered these provisions in reaching its conclusions as applicable. It is, of course, not required that equal weight be given to a particular criterion.
The parties intermarried on August 19, 1988 in East Hartford, Connecticut. Both parties have lived in this State for at least twelve months next preceding the filing of this complaint. There were no children born issue of the marriage and neither party is receiving assistance from any state or municipal government.
The marriage is irretrievably broken without prospect of reconciliation.
Accordingly, the marriage is ordered dissolved on said grounds and, at her request, the plaintiff's maiden name, Angela Carucci, is ordered restored to her.
Shortly before they married the parties purchased a condominium for $135,500. The down payment of $13,500 was borrowed from Lucia Carucci (Lucia), the plaintiff's mother. That loan has not been repaid. The parties apparently contributed a modest sum in addition and mortgaged approximately $121,000 CT Page 7709 (Lucia guaranteed the note). The mortgage balance is now about $114,000 and the property has a present fair market value of about $85,000 — it having decreased in value since its purchase. There is an approximate deficit equity of $30,000.
In September 1991, for reasons of economy, they moved into Lucia's home into an "in-law" basement apartment. They paid no rent but sporadically contributed towards utilities or homeowners insurance. From November 1991 to the present the condo has been rented. The rental income does not cover the costs of carrying the condo, and until approximately August 1994, any deficit was made up by one or both of the parties. Since August 1994 the wife has been paying the monthly shortfall of approximately $150.
Toward the end of 1989 the wife became interested in opening her own business. The husband during that time had a full time job either at Wang Laboratories or ITT Hartford, but he was amenable to the idea and supportive of the plan.
They rented a store in Ellington and opened a business known as Angela's Bridal Boutique, formed as a corporation with Lucia owning 50% of the shares and each of the parties owning 25%.
The parties borrowed $50,000 and Lucia borrowed $50,000 and that $100,000 was the working capital.
The husband helped get the store ready and would often assist after work when it opened. The wife ran it during the day. The Bridal Shop was failing and Lucia suggested they move the business into a store owned by her on Route 83 in Vernon. They left the Ellington store owing $20,000 in rent which Lucia eventually paid by a compromise agreement with the landlord for $10,000.
It took about three months to get the new store ready for business. Most of the money needed came from Lucia, although the parties did get $11,000 from an insurance claim which went into it. The husband contributed a fair amount of personal labor into the remodeling work, as did the wife. The prior tenant paid $2,400 per month rent to Lucia, but the arrangement between the Wisz's and Lucia was informal. Lucia has received no rent from the parties though she asked the parties to contribute towards utilities, taxes and insurance. The wife continued to manage the Bridal Shop after it opened in the Vernon location. At times the husband would come in after his work but the wife was essentially CT Page 7710 the manager.
The marriage began to deteriorate. In December 1993 the wife moved upstairs with Lucia and in July 1994, she moved in with her brother. In September 1994, the husband left the in-law apartment. The separation was precipitated by arguments. The wife felt that he did not trust her and would not allow her any independence, while the husband felt Mrs. Wisz was excluding him from her life. On occasion Mr. Wisz could lose his temper, throw things and even struck his wife in one instance.
In 1993, the three owners refinanced the business. They borrowed $84,000 secured by a mortgage on Lucia's residence, although all three signed the promissory note. Of that sum $60,000 went to pay off Lucia's $50,000 loan originally obtained for the Ellington Store; and the $10,000 back she paid to the prior landlord; $10,000 went to Lucia's ex husband as part of a dissolution settlement, and the balance went to pay off store debts, including the balance of the parties original $50,000 loan.
The business income is paying off that $84,000 loan.
The bridal shop in Vernon is successful when compared to the Ellington store.
It produces enough income to pay the $84,000 loan (It is now down to $70,000). The wife has been drawing $300 a week from it (in the form of a loan). It also pays $429 per month for a leased automobile which Mrs. Wisz drives, plus other living expenses of Mrs. Wisz. But, as noted, the store pays no rent to the owner of the property, Lucia.
The bookkeeping can be described as casual and it is difficult, if not impossible, to accurately value a small business such as this.
The wife's accountant assessed the value at $40,000, but reduced it (by accepted procedure for a small business, by 30%). He determined a 25% share would be worth $7000. His conclusions are based on the business tax returns and using an IRS approach for valuing a business.
The husband's expert concludes that a 25% interest is worth $40,000 (although he concedes no buyer would pay that sum, for CT Page 7711 purposes of valuing a business for dissolution purposes that is not necessary). His conclusion rests on a comparison of the cost of certain items to their sales price and extrapolating that to a projected profit percentage, and then comparing that to a standard for the Woman's Ready to Wear Industry. He went outside the business tax returns to compute his values. The Court is not persuaded that the tax returns are incorrect or unreliable and determines that based on the known figures, the total value of the business is closer to the $40,000 testified by the wife's expert witness.
The major part of the financing for the bridal shop came from Lucia. There is presently $70,000 left on the $84,000 note which all three signed but which is secured by a mortgage on Lucia's home. The wife has been the manager of the business and is mainly responsible for its success although, concededly, the husband contributed significant "sweat equity" into getting both places ready and would help after work as well. But the couple has been financially assisted by Lucia not only with respect to the business, but by living in her home rent free during which time they saved of $18,800 in joint funds (which the husband took possession of some time ago).
With the foregoing factual findings the Court enters the following order.
Neither party shall pay alimony to the other. The wife is able to support herself with the business and the husband earns close to $45,000 in his job. Alimony is not indicated under these circumstances.
The husband shall quitclaim his interest in the jointly owned condominium known as 21D Folkstone Rd., East Windsor, Connecticut to the wife. She shall assume responsibilities for all costs, taxes and mortgage on said property and hold the husband harmless therefrom. If the husband fails to quitclaim his interest within thirty days of this judgment, then said property shall be transferred to the wife pursuant to § 46b-81(a). This order effectively relieves the husband of some $21,750 in debt — 1/2 of the deficit equity and 1/2 of the loan from Lucia.
The husband shall transfer to the wife all his interest in and to the business known as Angela's Bridal Boutique, Inc. She shall hold him harmless from any debt of said business, including the outstanding bank loan. CT Page 7712
The wife shall retain possession and ownership of a 1968 Corvette which she owned prior to the marriage.
The wife shall have no interest in the husband's stocks, retirement or 401 K plans.
Each party shall be responsible for his or her own attorney's fees.
The husband shall pay the sum of $9,500 to the wife within fourteen days of this judgment.
The wife shall hold the husband harmless from the loan of $13,500 the parties owe to Lucia.
Klaczak, J.